UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JESSE DANIEL ROBARDS and<br>TAMARA LASHAE ROBARDS,<br><br>Plaintiffs,<br><br>v.<br><br>HERBERT H. SLATERY, III, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   NO. 2:24-cv-00052<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jesse and Tamara Robards have filed a pro se action under 42 U.S.C. § 1983, alleging a conspiracy to violate their parental rights between and among (1) the current and former Tennessee Attorneys General; (2) various officials with the Tennessee Department of Children's Services (DCS); (3) attorneys representing both the DCS and private individuals (including both Plaintiffs) during proceedings in state court; (4) judges, a prosecutor, and the sheriff of Putnam County, Tennessee; (5) an "On-Site Drug Testing State Contractor"; (6) the Putnam County Clerk of Court; (7) Cookeville Regional Medical Center; (8) the FBI; and (9) Park West Medical Center in Knoxville, Tennessee. (See Doc. No. 1 (Complaint); Doc. No. 6 (Amended Complaint); Doc. No. 8 (Second Amended Complaint)). Plaintiffs have each filed an application for leave to proceed in forma pauperis (IFP). (Doc. Nos. 2 and 10). On September 25, 2024, they jointly filed a Motion for Temporary Restraining Order. (Doc. No. 11 (TRO Motion)).

### I. IFP APPLICATIONS

Plaintiffs' IFP applications list monthly expenses that exceed their monthly income, and minimal assets. It therefore appears that Plaintiffs cannot pay the $405 civil filing fee "without

undue hardship." Foster v. Cuyahoga Dep't of Health and Human Servs., 21 F. App'x 239, 240 (6th Cir. 2001). Accordingly, the IFP applications (Doc. Nos. 2 and 10) are **GRANTED**. 28 U.S.C. § 1915(a).

## II. INITIAL REVIEW

### A. LEGAL STANDARD

The Court must conduct an initial review and dismiss the Complaint (as amended) if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); see also Ongori v. Hawkins, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). Review for whether the Complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, Erickson v. Pardus, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009).

### B. ANALYSIS

#### 1. Facts

The Complaint alleges a sprawling conspiracy which began in 2017 and continues to the present day, the object of which is the "illegal kidnapping" of Plaintiffs' six minor children,

2

identified by the initials T.K.R., R.L.R., A.L.S., T.S.R., T.D.R, and T.C.R. (Doc. No. 1 at 3). It appears that Plaintiffs' parental rights with respect to three of the children were terminated, and that those children were placed with foster parents who later adopted them. (See id. at 5; Doc. No. 11 at 3). Final parental rights/custody determinations have apparently not been made with respect to the remaining three children (see Doc. No. 1 at 9 (asserting liability of Putnam County judges due to their roles in "on-going cases"), but Plaintiffs "to this day [are] barred from having contact with their children" due to Plaintiffs' suspected drug use, which has been indicated by test results they claim were "clearly falsified." (Doc. No. 11 at 4).

Asserting violations of their rights under the First, Fourth, Sixth, and Fourteenth Amendments to the U.S. Constitution (Doc. No. 1 at 12), Plaintiffs claim a variety of legal injuries (id. at 14) but seek only one item of relief: an emergency injunction for the "safe return of T.S.R., T.D.R., and T.C.R. to parent custody." (Id. at 11, 14). In their TRO Motion, Plaintiffs seek an emergency injunctive order for the "safe return of [all] six minor children," but "certainly . . . regarding T.S.R., T.D.R., and T.C.R.[,] as the [other] three children have been adopted and as such will require more of the Court[']s time to untangle this web of deceit and betrayal at the hands of the State." (Doc. No. 11 at 1).

Attached to the TRO Motion are some 660 pages of exhibits, largely comprised of medical records related to the delivery and newborn care (including toxicology screens) of T.S.R. (born July 2021, in Cookeville, Tennessee), T.D.R. (born November 2022, in Knoxville, Tennessee), and T.C.R. (born December 2023, in Asheville, North Carolina). Other exhibits include copies of various court filings. First, there is a copy of Plaintiff Jesse Robards's April 30, 2024, pro se filing in Putnam County Juvenile Court of a motion "in the matter of T.D.R. DOB 11-21-2022 [and] T.C.R. DOB 12-10-2023." (Doc. No. 11-1 at 39–52). Next, there are copies of a series of orders

3

by the Putnam County Circuit Court, culminating in an order entered just two weeks ago, on September 16, 2024, dismissing Plaintiffs' appeal to Circuit Court from the Putnam County Juvenile Court, as the Juvenile Court case, "File Number 24-DN-26, . . . is not yet ripe for appeal." (Doc. No. 11-2 at 482–83). As of the date of that Circuit Court order, "the Juvenile Court ha[d] not entered an Order Adjudicating the Motion to Set Aside Default Judgment and for Relief from Judgment Forthwith, pursuant to Rule 59.04 or 60.02, filed on July 12, 2024, and thus there is no Final Order which can be properly appealed at this time." (Id. at 482).

In addition, this Court takes judicial notice of the online records of the Tennessee Court of Appeals, which indicate that Plaintiffs are the appellants in the case of In Re Tayla R., M2024-00248-COA-R3-PT, where they are appealing from the judgment of the Putnam County Chancery Court and are each represented by their own attorney, and where appellate briefing was just completed on September 23, 2024.[1]

    2. Conclusions

The Complaint invokes Section 1983 and claims violations of Plaintiffs' parental rights and other rights protected by the U.S. Constitution; it is not predicated on the Court's diversity jurisdiction. If this were a diversity case, the domestic-relations exception to diversity jurisdiction would clearly apply. "The domestic-relations exception deprives federal courts of diversity jurisdiction if the plaintiff seeks to modify or interpret the terms of an existing . . . child-custody decree." Chevalier v. Est. of Barnhart, 803 F.3d 789, 795 (6th Cir. 2015). The Sixth Circuit has declined to determine whether this exception also applies in federal-question cases, see Alexander v. Rosen, 804 F.3d 1203, 1205 (6th Cir. 2015), but it has not closed the door on joining the Seventh Circuit in deciding that it does, in the proper case. McGuire v. Tennessee, No. 22-5614, 2023 WL

---

[1] See https://pch.tncourts.gov/CaseDetails.aspx?id=88732&Number=True (last visited Sept. 30, 2024). It appears that "Tayla R." is the child whose initials are T.S.R. (See Doc. No. 11 at 1).

9289932, at *2 (6th Cir. Mar. 17, 2023), cert. denied, 144 S. Ct. 218 (2023) (noting that "[a]t least one circuit . . . has applied the exception in federal-question cases," "[b]ut we need not decide the matter today") (citing Kowalski v. Boliker, 893 F.3d 987, 995 (7th Cir. 2018)). Given this state of the law, and because of the specific relief these Plaintiffs seek—"return of T.S.R, T.D.R, and T.C.R. to parent custody"—the Court is compelled to examine whether the domestic-relations exception precludes the exercise of subject-matter jurisdiction in this case.

"When analyzing the applicability of the domestic-relations exception," courts "must focus on the remedy that the plaintiff seeks: Does the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-custody decree?" Chevalier, 803 F.3d at 797. "[I]f the plaintiff requests that a federal court determine who should have care for and control a child, then that request is outside the jurisdiction of the federal courts." Id. Plaintiffs here allege "the illegal kidnapping" of their six children when those children were removed from their custody by the State, through the operation of the DCS and related officials. But Plaintiffs only seek relief with regard to three of those children, and the remedy they seek is an immediate award of custody, which would necessarily entail the modification or overturning of existing state-court custody awards and orders. It would *not* entail the award of custody to one parent over the other, and the concomitant need for "continuing judicial supervision of a volatile family situation" that "federal courts are poorly equipped to handle." Id. (quoting Lloyd v. Loeffler, 694 F.2d 489, 492 (7th Cir. 1982)). And perhaps that distinction makes all the difference, given that the domestic-relations exception typically only reaches such matters that are hotly contested in state family courts.

However, in a federal-question case that has some factual similarities to the one before this Court, the district court in Sefa v. Kentucky, No. CIV.A. 5:12-32-JMH, 2012 WL 1158793 (E.D. Ky. Apr. 5, 2012), considered a complaint that accused Kentucky's version of the DCS of

5

"kidnapping" two children because of neglect by their mothers (both of whom were the plaintiff's sisters) so as to make them wards of the state, and then moving "to terminate parental rights so the children may be adopted." Id. at *1. The Sefa court analyzed the matter as follows:

> Plaintiff also asks for injunctive relief pursuant to § 1983. Specifically, he asks that this Court enter an order directing the "release" of the minor children based on the alleged constitutional violations. Plaintiff's request for the minor children's release would require this Court to review and overturn decisions regarding custody and parental rights made by the state court. "Under the principles of comity and deference to state expertise in the field of domestic relations, it has been [the Sixth Circuit's] consistent policy to refuse to exercise jurisdiction over claims which seek to collaterally attack a state court judgment terminating parental rights." *See Stephens v. Hayes*, 374 F. App'x 620, 623 (6th Cir. 2010) (unpublished opinion) (declining to exercise jurisdiction over claims "where the tort action is a mere pretense and the suit is actually concerned with child custody issues").

Id. at *2 (E.D. Ky. Apr. 5, 2012). The district court dismissed Sefa's case. In a per curiam opinion, the Sixth Circuit affirmed, finding that "to the extent Sefa seeks a declaration that the state's child-custody determination was unlawful, an injunction for the minor children's release, and monetary damages arising from the child-custody decision, these claims constitute collateral attacks on the state court judgments terminating [his sisters]' parental rights and [were] properly excluded from consideration by the [district] court[]." Sefa v. Kentucky, 510 F. App'x 435, 437–38 (6th Cir. 2013) (citing Stephens v. Hayes, 374 Fed. Appx. 620, 623 (6th Cir. 2010), and Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992)). See also Drewes v. Ilnicki, 863 F.2d 469, 471 (6th Cir. 1988) ("[F]ederal courts do not have jurisdiction over a claim where the tort damages action is a mere pretense and the suit is actually concerned with custody issues.") (citing Jagiella v. Jagiella, 647 F.2d 561, 565 (5th Cir. 1981)).

This Court, following Sefa, finds that even if it is not barred from exercising jurisdiction over this case, it must refuse to entertain Plaintiffs' claims as a matter of comity. Granting Plaintiffs the relief they seek "would require this Court to review and overturn decisions regarding custody

6

Case 2:24-cv-00052   Document 12   Filed 10/01/24   Page 6 of 8 PageID #: 786

and parental rights made by the state court," an operation that would run counter to principles of comity and deference to state expertise in the field. Sefa, at *2. Furthermore, as revealed in Plaintiffs' filings and judicially noticed above, the state courts in this case are still in the process of making such decisions regarding custody and parental rights. Accordingly, even if it were otherwise proper to entertain this Section 1983 action alleging an ongoing conspiracy to deprive Plaintiffs of their civil rights, the pendency of custody proceedings in state court to determine Plaintiffs' rights with respect to T.S.R., T.D.R., and T.C.R. requires that this Court abstain. Plaintiffs' lawsuit seeks an injunctive order granting them custody over those same three children. Where state proceedings related to custody, termination of parental rights, and adoption are ongoing, "the *Younger* abstention doctrine prevents the district court from ruling [on a related request for injunctive relief] because the proceeding implicates important state interests and [Plaintiffs] ha[ve] an adequate opportunity to raise [their] challenges" in state court. Bodell v. McDonald, 4 F. App'x 276, 279 (6th Cir. 2001) (cited in Sefa, 2012 WL 1158793, at *2; citing O'Shea v. Littleton, 414 U.S. 488, 499–504 (1974); Younger v. Harris, 401 U.S. 37, 43–44 (1971)); see Evans v. Hepworth, 433 F. Supp. 3d 1171, 1180 (D. Idaho 2020) ("[T]here is perhaps no state administrative scheme in which federal court intrusions are less appropriate than domestic relations law.") (quoting DuBroff v. DuBroff, 833 F.2d 557, 561 (5th Cir. 1987), and citing other circuit-court cases). Plaintiffs here have taken the opportunity to raise their federal constitutional concerns—"specifically, their 4th, 14th amendment, their right to parental integrity, parental rights"—before the state courts. (Doc. No. 1-1 at 16; see also Doc. No. 11-2 at 465–66).

In sum, this Court cannot properly exercise jurisdiction over this Complaint seeking federal intervention into state domestic-relations matters. Because state custody proceedings are currently ongoing, principles of federalism and comity require that the Court abstain from intruding upon

7

them through the exercise of its injunctive powers. Plaintiffs' attempt to effectively remove custody proceedings to federal court by alleging illegal and corrupt case-administration and adjudication amounts to an invitation to this Court to "put [its] brethren of the state judiciary on trial." City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 828 (1966). The Court must decline to do so, even though Plaintiffs allege that leaving the custody determination before the state courts will result in violations of their federal rights. It is for the state courts to address such alleged violations, in the context of resolving the dispute over custody of T.S.R, T.D.R, and T.C.R. that is properly before them.

### III. CONCLUSION

For the above reasons, this action is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted. Plaintiffs' TRO Motion (Doc. No. 11) is **DENIED** as moot.

The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE